THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN CARLIN : |
| 3687 Jupiter Drive : |
| North Royalton, Ohio 44133 : |
| : |
| Plaintiff, : CASE NO. 1:17-cv-1222 |
| : |
| v. : JUDGE |
| : |
| : MAGISTRATE JUDGE |
| VFO GROUP : |
| 11800 31st Court North : **Jury Demand Endorsed Herein** |
| St. Petersburg, Florida 33716 : |
| : |
| and : |
| : |
| AI SQUARED : |
| 130 Taconic Business Park Road : |
| Manchester Center, VT 05255 : |
| : |
| Defendants. : |

# COMPLAINT

NOW COMES Plaintiff John Carlin ("Plaintiff") and proffers this Complaint for damages against Defendants VFO Group and AI Squared. ("Defendants").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. Chapter 4111. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

2. Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendants in the Northern District of Ohio, Plaintiff performed his job duties there, and Defendants are doing and have done substantial business in the Northern District of Ohio.

3. Plaintiff was an "employee" as defined in Chapter 4111 of the Ohio Revised Code, and the Fair Labor Standards Act.

4. Defendants are "employers" as defined in Chapter 4111 of the Ohio Revised Code, and the Fair Labor Standards Act.

**THE PARTIES**

5. Plaintiff is a natural person residing in Cuyahoga County, Ohio.

6. Upon information and belief, Defendant VFO Group is a foreign corporation registered to do business in Ohio.

7. Upon information and belief, Defendant AI Squared is a wholly-owned subsidiary of Defendant VFO Group and is a foreign corporation registered to do business in Ohio.

8. Defendants conduct business in the Northern District of Ohio and employed Plaintiff in the Northern District of Ohio.

**FACTUAL BACKGROUND**

9. Plaintiff began working for Defendant AI Squared in September of 2009 and remained employed until January of 2014.

10. During this time, Plaintiff was not given an official job title but was often called Market Manager and/or Sales Representative.

11. Plaintiff's job duties included but were not limited to: strategizing and providing advice as to how to reach out to customers and make sales, making recommendations as to what sales outreach programs were effective and should be used, managing the CRM sales platform called SalesForce, making calls to existing and potential clients and hiring and working with a team of four subcontractors who were responsible for outbound calling into potential customers using SalesForce.

12. Plaintiff was told by Defendant AI Squared how many subcontractors he should hire and was given instructions as to how much he should pay those subcontractors.

13. Plaintiff was told to pay the subcontractors himself and sent invoices to Defendant AI Squared for reimbursement of their pay.

14. If a subcontractor requested a raise, it had to be presented and approved by Defendant AI Squared before it could be approved.

15. Plaintiff also frequently attended trade shows paid for by Defendant AI Squared and attended weekly meetings with Defendant AI Squared's CEO, David Wu, and the subcontractors to discuss ongoing projects and received bonuses for hitting certain sales goals.

16. Mr. Wu would also introduce new campaigns for the subcontractors to work on and they were given bonuses for achieved levels of activity. Such performance-based pay would not be offered to an independent contractor.

17. Plaintiff received a 10% commission on all sales that were generated generally.

18. Plaintiff also used and maintained Defendant AI Squared's CRM (Customer Relation Management) system and possessed a company email address that he used to correspond with clients, potential clients and his co-workers.

19. Upon the launch of any new product or division, Plaintiff was responsible for setting up meetings with potential customers and traveled with David Wu and Marc Zablatsky (VPGM of Sitecues, another of Defendant's affiliated businesses) to meet with these potential customers.

20. Plaintiff was always reimbursed for his travel expenses, as any other employee would be. He also frequently spoke at conferences as a representative of Defendant AI Squared.

21. Plaintiff asked Defendant AI Squared for fringe benefits, as he believed he was an employee, but this request was denied.

22. Therefore, Plaintiff resigned in January of 2014 to pursue other opportunities where he would receive fringe benefits.

23. Plaintiff worked in another position before returning to Defendant AI Squared in or around May of 2015.

24. While Plaintiff was working in a different position, Defendant AI Squared hired an employee, George Spohn, to fill Plaintiff's position and continue the sales efforts of this new division.

25. Upon information and belief, Spohn was an employee of Defendant AI Squared, not an independent contractor.

26. Upon information and belief, Spohn received all fringe benefits that were available to employees of Defendant AI Squared.

27. Upon his return, Plaintiff performed very similar job duties as Mr. Spohn and worked directly with him.

28. Importantly, Plaintiff and Spohn were placed on the same commission plan.

29. In addition to the job duties listed herein, Plaintiff was initially also working very closely with the team of contractors he was working with prior to leaving to take his other position.

30. These contractors were now paid directly by Defendant AI Squared, not Plaintiff.

31. Soon after he returned, this responsibility was removed and he performed the exact job duties as Mr. Spohn but remained classified as an independent contractor while Spohn was an employee.

32. During this time, Plaintiff was able to work predominantly from home but also made trips to Defendant AI Squared's corporate office in Manchester Center, Vermont and another in Cambridge, Massachusetts.

33. Plaintiff also continued to focus on his role in sales. Defendant AI Squared provided Plaintiff with a list of prospective clients who he contacted to attempt to make sales. Plaintiff would also travel to meet with prospective clients, with all expenses paid and/or reimbursed by Defendant AI Squared.

34. Upon information and belief, Defendant VFO Group purchased Defendant AI Squared in June of 2016.

35. Throughout the entirety of his employment with both Defendant AI Squared and Defendant VFO Group, Plaintiff was misclassified as an independent contractor.

36. Defendants misclassified Plaintiff as an independent contractor.

37. For the duration of his employment, Plaintiff was a non-exempt employee of Defendants.

38. For the entirety of his employment with Defendants, Plaintiff was paid bi-weekly and received the same amount of pay each week with no fluctuation based on the number of hours he worked per week.

39. Plaintiff was never paid on a per-project or per-job basis.

40. Plaintiff also periodically received commissions on sales he made for Defendants.

41. Typically, Plaintiff received a percentage of the total amount of the sale after Defendants received payment from the client.

42. In December of 2016, Defendant VFO Group began paying Plaintiff instead of Defendant AI Squared.

43. Plaintiff frequently worked over 40 hours per week but was never paid overtime for any hours worked over 40 per week.

44. Defendant exercised full control over Plaintiff's employment for all of the reasons described herein.

## COUNT I
## FLSA – Unpaid Overtime

45. All of the preceding paragraphs are realleged as if fully rewritten herein.

46. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.

47. At all times relevant herein, Plaintiff was employed as the Market Manager and/or Sales Representative and/or Regional Manager.

48. Defendants misclassified Plaintiff as an independent contractor.

49. Accordingly, Defendants refused to pay Plaintiff the overtime premium required by the FLSA.

50. Plaintiff routinely worked in excess of forty hours per week.

51. Plaintiff should have been paid the overtime premium for hours worked in excess of forty hours per week.

52. Defendants knew or should have known of the overtime payment requirement of the FLSA.

53. During the entire duration of Plaintiff's employment, Defendants knowingly and willfully failed to pay Plaintiff the overtime wages he was due.

54. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, and all other remedies available, as result of Defendants' willful failure and refusal to pay overtime wages in violations of Sections 6 and 7 of the Act (29 U.S.C. §§206-207).

### COUNT II
### O.R.C. 4111.03 – Unpaid Overtime

55. All of the preceding paragraphs are realleged as if fully rewritten herein.

56. This claim is brought under Ohio Law.

57. Defendants' repeated and knowing failure to pay overtime wages to Plaintiff was a violation of Section 4111.03 of the Ohio Revised Code.

58. For the Defendants' violations of O.R.C. 4111.03, Plaintiff is entitled to recover unpaid wages, interest, attorneys' fees, and all other remedies available under Ohio Law.

## COUNT III
### Damages Pursuant to O.R.C. § 2307.60

59. Plaintiff restates and incorporate the foregoing allegations as if fully rewritten herein.

60. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

61. By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff has been injured as a result.

62. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

63. As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial,

but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ Rachel A. Sabo, Esq.
Rachel A. Sabo (0089226)
Rachel@TheFriedmannFirm.com
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, Ohio 43207
(614) 610-9757: Phone
(614) 737-9812: Fax

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Rachel A. Sabo*

Rachel A. Sabo (0089226)